# IN THE UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JAMES L. ORRINGTON, II, DDS, PC, G. NEIL GARRETT, DDS, PC, JERRY SPYRATOS, DDS & GARY M. DONG, DDS. on behalf of plaintiffs and a class, | ) ) ) ) ) ) | |
| | ) | 12 CV 8796 |
| Plaintiffs, | ) ) | |
| v. | ) ) | Honorable Judge Shah Magistrate Judge Kim |
| HIOSSEN, INC., and JOHN DOES 1-10, | ) ) ) | |
| Defendants. | ) | |

**PLAINTIFFS'** *CORRECTED* **MEMORANDUM IN SUPPORT OF**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

Plaintiffs James L. Orrington, II, D.D.S., P.C.; G. Neil Garrett, D.D.S., P.C.; and Jerry Spyratos, D.D.S., and Gary M. Dong, D.D.S., ("Plaintiffs") each individually and on behalf of a Settlement Class of similarly situated persons, by class counsel, Edelman, Combs, Latturner & Goodwin, LLC, respectfully submit the following *Corrected* Memorandum in Support of Final Approval of the Class Action Settlement Agreement with Defendant Hiossen, Inc. ("Defendant"). Specifically, Plaintiffs submitted their initial Memorandum in Support of Final Approval on August 19, 2014.

This *Corrected* Memorandum in Support of Final Approval is intended to: (1) clarify that all claims submitted by class members were received in a timely and valid manner. As set forth in the Declaration of Julie Clark (Appendix B), each of the submissions received were postmarked or faxed on or before the deadline and no additional submissions have been received; (2) clarify that while Plaintiffs noticed and prepared for depositions in this matter, the parties did

1

resolve the actions before oral discovery occurred; and (3) provide a revised Proposed Final Approval Order.

As indicated in Plaintiffs' initial submission, the Parties' Class Settlement Agreement was preliminarily approved on April 22, 2014. In summary, subsequent to the entry of preliminary approval, notice of the settlement was delivered successfully via fax and supplemental mailing to 1,661 of the total 1,661 class members on the list provided by Defendant. Specifically, notice of the Settlement was sent by Plaintiffs' counsel's agent, Profax, Inc. ("Profax"), to 1,661 facsimile numbers identified by Defendant as potential Class Members. A total of 1,478 transmissions were ultimately successful. Plaintiffs' Counsel (Edelman, Combs, Latturner & Goodwin, LLC or "ECLG") used the class member list provided by Defendant to obtain address information and send Notice of the Settlement via U.S. Mail to the remaining 183 of the remaining 183 fax numbers. Class-Settlement.com caused the mailing of 183 notices to class members. (*See* Declaration of Andrew Barnett, Appendix A). 4 of those mailed notices bounced back to ECLG as undeliverable. At least one forwarding attempt was made for envelopes that returned with an alternative address. In total, class counsel was able to send notice to 1,661 of the 1,661 potential class members, yielding a 100% success rate. (*See* Declaration of Julie Clark, Appendix B)

**No** objections or requests for exclusion have been filed or received by Counsel. **164** timely and valid claims were submitted by Settlement Class Members requesting a portion of the settlement fund. **No** late claims have been submitted**.** (Appendix B)

Specifically, Plaintiffs' counsel received 186 submissions postmarked or faxed by the July 29, 2014 deadline. Of these responses, 22 submissions were found to be invalid because they were duplicate claims. (Appendix B) As of the filing date of this *Corrected* Memorandum,

Plaintiffs confirm that no claims were received postmarked or faxed beyond the claims deadline. (Appendix B)

In sum, after notice by fax and mail to the Settlement Class Members a total of **164** valid and unique claim forms have been submitted. There were **no** objections to the settlement or requests for exclusion by the Settlement Class. (Appendix B)

## I. OVERVIEW OF THE LITIGATION PRECEDING SETTLEMENT.

Plaintiff James L. Orrington, II, D.D.S., P.C. filed this action on November 2, 2012 in the Northern District of Illinois against Defendant Hiossen, Inc. ("Defendant") alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"), and state law and sought damages individually and on behalf of a putative class. On April 4, 2014, Plaintiff amended the complaint to add (1) G. Neil Garrett, D.D.S., P.C.; and (2) Jerry Spyratos, D.D.S., and Gary M. Dong, D.D.S., as additional plaintiffs

Subsequent to service, the parties undertook extensive discovery followed by numerous settlement discussions and ultimately, with the assistance of Magistrate Judge Kim and a formal settlement conference, the parties negotiated the settlement at arms-length and in good faith. The Agreement was presented to the Court for preliminary approval. As demonstrated below, the parties' Agreement is now ripe for this Court's consideration and final approval.

## II. THE ADMINISTRATION OF THIS CLASS ACTION SETTLEMENT.

### A. The Preliminary Approval Order.

On April 22, 2014, this Court entered an order granting preliminary approval of the Agreement reached between the parties and certifying the following class for settlement purposes:

> (a) all persons and entities (b) to whom, during 2012, (c) Hiossen, Inc., or a third party acting on Hiossen, Inc.'s behalf, transmitted or attempted to transmit unsolicited facsimile advertisements.

In the Preliminary Approval Order ("Order"), the Court specifically found that the proposed terms of the Agreement satisfied all of the elements of Federal Rules of Civil Procedure 23(a) and 23(b)(3). The Order further established a procedural framework for the final approval of the Agreement. The Order required that notices be sent to the members of the Class, set deadlines and procedures for submission of claims, requests for exclusion, and objections to the settlement, and set an August 26, 2014 final approval hearing.

    **B.    The Class Notice.**

As stated above, subsequent to the entry of the preliminary approval order, notice of the Agreement was sent via facsimile to 1,661 of the fax numbers identified in records produced by Defendant as belonging to Class Members. Of the 1,661 attempts, there were a total of 183 fax numbers that were unsuccessful after two attempts. Class counsel directed Profax, Inc. to resend the notice to the failed numbers one more time, ultimately reaching 1,478 of the 1,661 Class Members via facsimile transmission. (Appendix A).

Class counsel then requested that Class-Settlement.com send notice via US Mail to those class members who were not reached via facsimile. Of the 183 class members who did not receive notice via facsimile, Class-Settlement.com was able to locate a physical address for and send the notice to each of the 183 class members via First Class U.S. Mail on June 3, 2014 (Appendix A). 4 undeliverable notices bounced back to class counsel. Forwarding attempts were made for any notices that were returned with a forwarding address. (Appendix B)

Consequently, mailed notice was successfully delivered to 183 class members. In sum, the class notice was successfully delivered to 1,661 Class Members (1,478 by fax, and 183 by

mail), or 100% of the Class. (Appendix B)

As of the filing of this memo, 164 valid and unique claim forms were submitted for the Settlement Class. There were **0** late claims received after the July 29, 2014 deadline. **No** objections or requests for exclusion have been received from the Settlement Class.

**C.    The Value of the Agreement.**

Plaintiffs and Settling Defendant entered into a class action Settlement Agreement. Specifically, the terms of the Agreement are as follows:

1. Settlement Fund. Subject to Court approval, Defendants agree to pay the sum of $250,000.00 to a settlement fund (the "Settlement Fund"). The Settlement Fund shall be distributed as follows:

> (a) Payment of $5,000 to Plaintiff James L. Orrington, II, D.D.S., P.C., $1,500 to Plaintiff G. Neil Garrett, D.D.S., P.C., and $1,500 to Plaintiffs Jerry Spyratos, D.D.S. and Gary M. Dong, D.D.S., as an incentive award for their services as class representatives.
>
> (b) Payment of attorney's fees and costs in the amount of $83,333.33 which amount represents 1/3 of the Settlement Fund to Plaintiffs' Counsel Edelman, Combs, Latturner & Goodwin, LLC.
>
> (c) Reimbursement to Plaintiffs' counsel of reasonable costs of notice and administration of the settlement. To date, a total of $239.56 related to faxing and mailing notice and administrative expenses has been incurred causing notice upon Class Members. In addition, the estimated expenses for delivery of checks to the Settlement Class amount to $215.00. Thus, Plaintiffs' counsel seeks reimbursement of $454.56 in additional attorney's fees and costs.
>
> (c) After payments set forth in subparagraphs (a) - (b) of this Paragraph, the balance of the Settlement Fund shall be distributed pro rata among those members of the Settlement Class who returned a valid claim form.

In sum, 164 Settlement Class Members submitted valid claims. Each Class Member will receive $964.70 and shall be paid by checks void 90 days after issuance.

5

2. Unclaimed or Undistributed Settlement Funds. If the Court allows the payments set forth above, including the incentive award to Plaintiffs and the attorney's fees and costs petitioned for, the only funds that might remain in the settlement account are those that may result from Class Members' failure to timely negotiate their settlement checks. Additional funds may exist as the remainder in the account following the payments set out in subparagraphs (a) and (b) of paragraph 1, above, cannot be equally distributed amongst the 164 valid claimants. The parties intend, subject to Court approval, that all amounts resulting from uncashed checks or funds that could not otherwise be distributed shall be distributed as a *cy pres* award to an organization to be selected by Defendant and approved by the Court. The payments to the *cy pres* recipient will occur within 30 days following the last void date of the Settlement Class members' settlement checks.

3. Attorney's Fees and Costs. The Settling Defendant has agreed not to oppose Plaintiffs' counsel's request for attorney's fees in an amount equal to 1/3 of the Settlement Fund ($83,333.33) plus expenses incurred in administering the settlement. Plaintiffs' counsel has incurred expenses in connection with the faxing and mailing of notice to class members in the amount of $239.56 (Appendix A). Estimated expenses for delivery of checks to class members amount to $215.00. Thus, Plaintiffs' counsel seeks a total of $83,787.89 in attorney's fees *and* costs.

**D.    No Objections Were Received.**

Neither Plaintiffs' counsel nor counsel for Defendant have received any objection to the settlement or requests for exclusion. This should be viewed as an endorsement of the Agreement by the Class.

### E. No Government Entities Have Objected to the Proposed Settlement.

In accordance with this Court's Preliminary Approval Order and the Class Action Fairness Act, counsel for Defendant sent notice of the proposed settlement to the Attorney General of the United States as well as the Attorney General of each state in which Class Members reside. *See* Defendant's Notice of Compliance with 28 U.S.C. §1715. (*Docket No. 40*) Neither Plaintiffs' counsel nor counsel for Defendant have received any objections from these government officials, nor have any of those officials sought to intervene in this action.

## III. THE COURT SHOULD GRANT FINAL APPROVAL TO THE AGREEMENT

The Agreement satisfies all the requirements of Rule 23.

### A. Rule 23(a)(1) - The Class Is So Numerous That Joinder Of All Members Is Impracticable.

The class consists of 1,661 persons and/or entities. The Seventh Circuit has recognized that as few as 40 class members are sufficient to satisfy the "numerosity" requirement of Rule 23(a)(1). *Swanson v. American Consumer Industries, Inc.*, 415 F.2d 1326, 1333 (7th Cir. 1969); *see also, Newberg on Class Actions*, 3rd ed. Sec. 3.05, pp. 3-25 ("The difficulty in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiffs whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone."). The number of Settlement Class Members in this case plainly satisfies the numerosity requirement of Rule 23(a)(1).

### B. Rule 23(a)(2) - The Claims Of The Class Arise From Common Questions Of Law And Fact.

The "commonality" requirement of Rule 23(a)(2) is usually satisfied where the class members' claims arise from a common nucleus of operative fact. *Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992). Rule 23(a)(2) requires only that the class members share at least one

question of fact or law in common. *Kreuzfeld A.G. v. Carnehammer*, 138 F.R.D. 594, 599 (S.D.Fla. 1991) (the issue of commonality "turns on whether there exists at least one issue affecting all or a significant number of proposed class members").

In the present case, the claim arose from common questions: Whether Hiossen, Inc. engaged in a pattern of sending unsolicited fax advertisements; and whether by doing so it thereby violated the TCPA and Illinois state law. These common questions satisfy Rule 23(a)(2).

### C. Rule 23(a)(3) - Named Plaintiffs' Claims are Typical Of the Claims Of The Settlement Class Members.

The "typicality" requirement of Rule 23(a)(3) is satisfied for many of the same reasons that the "commonality" requirement of Rule 23(a)(3) is met. *De La Fuente v. Stokley-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1993)("A plaintiffs' claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory"); *see also Kornberg v. Carnival Cruse Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)(the typicality requirement is satisfied where the "claims or defenses of the class and the class representative arise from the same event or practice and are based upon the same legal theory").

In this case, Plaintiffs' claims arose from the same question of law as those of the Settlement Class Members: Whether the sending of unsolicited fax advertisements by Hiossen, Inc. violated the TCPA and Illinois state law. Rule 23(a)(3) is plainly satisfied in this case.

### D. Rule 23(a)(4) - Plaintiffs and Class Counsel Have Fairly And Adequately Protected The Interests Of The Class.

The determination that the "representative parties will fairly and adequately protect the interests of the class" as required by Rule 23(a)(4) involve two considerations: (1) whether the Plaintiffs' attorneys are properly qualified and experienced to conduct the litigation; and (2)

whether the Plaintiffs have any interests antagonistic to the class. *General Tel. Co. v. Falcon*, 102 S.Ct. 2364, 2370, n.13 (1982); *Retired Chicago Policy Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993).

As set forth in the Declaration of Daniel A. Edelman (<u>Appendix C</u>), Plaintiffs' counsel is experienced in class action litigation. In addition, Plaintiffs do not have any interest in conflict with the Settlement Class Members. Therefore, the named Plaintiffs and their counsel satisfy the adequacy of representation requirement of Rule 23(a)(4).

### E.     The Class Is Appropriate Pursuant to Rule 23(b)(3).

Class certification is appropriate under Rule 23(b)(3) where: (1) common questions of law or fact predominate over individual questions and where (2) a class action represents a superior method for the fair and efficient adjudication of the controversy. Because the claims at issue address the alleged practice of Defendant in sending unsolicited facsimiles, there are no individual issues and common questions predominate. A class action presents a superior method to fairly and efficiently adjudicate all claims of the Class in this case, within the meaning of Rule 23(b)(3). The Agreement provides Settlement Class Members the opportunity to obtain a portion of the statutory damages provided for by the TCPA without the filing of numerous identical lawsuits.

### F.     The Standard For Granting Final Approval To The Class Action Settlement.

In *Amchem Productions, Inc. v. Windsor*, 521 U.S. 591 (1997), the Supreme Court explained that, before approving a class action settlement, the District Court must first be satisfied that the elements of Rule 23(a) and 23(b) have been met. *Id.* at 621, 117 S.Ct. at 2248. Once the Court has determined that the requirements of Rule 23(a) and 23(b) have been met, the Court must then determine whether Rule 23(e) has been satisfied by determining whether the

settlement is fair, reasonable, and adequate. *General Electric Capital Corporation v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997). The Court considers the following six factors in making this determination:

1. The strength of the plaintiffs' case on the merits measured against the terms of the settlement;
2. The complexity, length, and expense of continued litigation;
3. The amount of opposition to the settlement among class members;
4. The presence of collusion in gaining a settlement;
5. The stage of the proceedings; and
6. The amount of discovery completed.

*Id*. (citing *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 308 (7th Cir. 1985)).

The class action settlement in the present case satisfies each of the factors outlined in *GE Capital*. Plaintiffs believed that they had a strong chance of prevailing if this case had gone to trial. Defendant disputes Plaintiffs' claims and believes that it has strong defenses to Plaintiffs' claims and to class certification. However, in order to avoid the uncertainty and expenses presented by further litigation, the parties agreed to settle the dispute between them. The arguable strength of the Class' claims compare favorably to the terms of the settlement, set forth above, satisfying the first of the *GE Capital* factors.

In addition, the settlement is warranted by the complexity, length and expense of continued litigation, satisfying the second *GE Capital* factor. The settlement easily satisfies the third *GE Capital* factor because none of the Class Members have elected to exclude themselves from the settlement or have objected to the settlement. There is no evidence of any collusion in reaching the settlement. To the contrary, the above-described payment amounts to Plaintiffs and Class Counsel compare favorably to the direct benefits to the Class, thereby satisfying the fourth *GE Capital* factor.

Settlement Class Members who submitted a valid claim will receive a recovery of

$964.70 per fax number. This recovery represents approximately 96% of the statutory damages that could be obtained in an individual lawsuit for a non-willful violation of the TCPA.

Finally, the fifth and sixth *GE Capital* factors also support the final approval of this settlement in light of the stage of pre-trial proceedings and the discovery completed to date. The parties engaged in extensive discovery including voluminous written discovery before engaging in settlement negotiations. The parties engaged in protracted negotiations in an attempt to resolve this case. Given the stage of proceedings, the investigation and discovery completed, the proposed settlement satisfies the fifth and sixth *GE Capital* factors.

## IV. THE ATTORNEY'S FEES AND COSTS ARE REASONABLE.

Pursuant to the Agreement, Class Counsel requests approval of payment of attorney's fees equal to 1/3 of the Settlement Fund in an amount equal to $83,333.33. Plaintiffs' counsel also seeks reimbursement of reasonable expenses incurred in sending notice and delivering settlement funds to the class members. The total amount of attorney's fees *and* costs sought is $83,787.89. Plaintiffs' counsel includes experienced class action attorneys, all of whom contributed their skills and expended their resources in a coordinated effort that resulted in the settlement of this matter. The Seventh Circuit has specifically authorized the district courts to award attorney's fees using the lodestar method or the percentage of fund method. *Cook v. Niedert*, 142 F.3d 1004, 1010 (7th Cir. 1998); *In re Synthroid Mktg. Litig*., 264 F.3d 712 (7th Cir. 2001).

It has been well established in the Seventh Circuit, and elsewhere, that fee awards based upon a percentage of a recovery are fair and reflect what could have been contracted for in the marketplace. Consumer protection cases, where counsel is retained on a contingent fee basis, are certainly no different. It is well established that when a representative party has created a

"common fund" for, or has conferred a "substantial benefit" upon, an identifiable class, counsel for that party is entitled to an award of attorneys' fees from the fund. *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970); *In re: Synthroid Marketing Litigation*, 264 F.3d 712, 717 (7th Cir. 2001). When deciding on appropriate attorney compensation in a common-fund case, a court must endeavor to award "the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re: Synthroid Marketing Litigation*, 264 F.3d at 718.

The Seventh Circuit in *Synthroid* explained that determination of the market rate for the legal fees should be based in part on the following factors: The market rate for legal fees depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case. *Id.* at 721.

Plaintiffs' counsel took this case on a contingent fee basis nearly two years ago, and thus was faced with a significant risk of non-payment. A fee request of 1/3 of the Settlement Fund is also consistent with the marketplace. The market rate for contingent fees in consumer cases such as this is in the 25% to 40% range, depending on various facts and circumstances. *Gaskill v. Gordon*, 942 F. Supp. 382 (N.D. Ill. 1996), aff'd, 160 F.3d 361 (7th Cir. 1998) (38% awarded); *Spicer v. Board of Options Exchange*, 844 F. Supp. 1226 (N.D Ill. 1993) (29% awarded); *Family L.P. v. Price Waterhouse LLP*, 2001 WL 1568856 (N.D. Ill. 2001) (33 1/3 % awarded); *Gilbert v. First Alert, Inc.*, 1998 WL 14206 (N.D. Ill. 1998); (30% awarded); *Goldsmith v. Technology Solutions Co.*, 1995 U.S. Dist. LEXIS 15093 (N.D. Ill. 1995) (33 1/3 % awarded); *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399 (7th Cir. 2000) (25% awarded).

This case was prosecuted by Plaintiffs' counsel on a contingent fee basis with no

assurance of any fee. In undertaking to prosecute this case on that basis, Plaintiffs' counsel assumed a significant risk of nonpayment or underpayment. Numerous cases recognize that the contingent fee risk is an important factor in determining the fee award. *See In re Continental Illinois Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a contingent basis, plaintiffs' counsel must be compensated adequately for the risk of non-payment); *Ressler v. Jacobsen*, 149 F.R.D. 651, 654 (M.D. Fla. 1992) ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award.").

Class Counsel filed a well researched complaint alleging claims for relief under federal law and state law. Class Counsel engaged in substantial written discovery and motion practice before participating in settlement discussions including a formal settlement conference with Magistrate Judge Kim. Additionally, Class Counsel undertook the administration of the settlement. In doing so, the vast majority of Class Members were properly contacted and provided the opportunity to participate in the settlement. Additionally, Class Counsel and its staff handled all inquiries and conducted extensive follow ups with numerous Class Members in assisting to bring claim forms into compliance. As discussed above, those Settlement Class Members who have submitted claims will receive $964.70 from the Settlement Fund. In light of the work performed in this matter, which has involved the administration of a nationwide class settlement, Class Counsel's request for an amount equal to 1/3 of the Settlement Fund, and reimbursement of notice and administrative expenses in the amount of $239.56 plus an anticipated $215.00 for delivery of Class Member Settlement payments, is reasonable. Accordingly, Class Counsel believes the amounts requested are reasonable and requests approval of $83,787.89 in fees and costs to class counsel.

## V. CONCLUSION.

For all the reasons set forth above, Plaintiffs each individually, and as representatives of the Settlement Class of similarly situated persons, by Class Counsel, request that this Court grant final approval of the Agreement and enter the parties' proposed final approval order, attached hereto as <u>Appendix D</u>.

Respectfully submitted,

<u>s/ Dulijaza Clark</u>
Dulijaza Clark

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Dulijaza Clark
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, IL 60603
 (312) 739-4200
(312) 419-0379 (FAX)

**CERTIFICATE OF SERVICE**

      I, Dulijaza Clark, certify that on August 25, 2014, I caused a true and accurate copy of the foregoing document to be served, via the Court's CM/ECF system, upon the following parties:

      Andrew W. Bonekemper, Esquire
      W. Christian Moffitt, Esquire
      Zachary Arbitman, Esquire
      10 Sentry Parkway, Suite 200, P.O. Box 3001
      Blue Bell, PA 19422
      abonekemper@foxrothschild.com
      cmoffitt@foxrothschild.com
      zarbitman@foxrothschild.com


      Jason S. Dubner, Esquire
      Thomas J. Kennedy, Esquire
      Butler Rubin Saltarelli & Boyd LLP
      Three First National Plaza
      Suite 1800
      70 West Madison Street
      Chicago, IL 60602
      jdubner@butlerrubin.com
      tkennedy@butlerrubin.com


      /s/ Dulijaza Clark
      Dulijaza Clark

Daniel A. Edelman
Dulijaza (Julie) Clark
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, Illinois 60603-3593
(312) 739-4200
(312) 419-0379 (FAX)